**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

25-35-SDD-SDJ

JOHN PAUL SMITH

**STATEMENT OF REASONS IN SUPPORT OF ORAL RULING**

On July 1, 2026, the Court held a hearing to consider the Government's *notice of intent* to use evidence pursuant to Federal Rule of Evidence 404(b) in its case-in-chief against John Paul Smith ("Defendant" or "Smith").[1]  After consideration of the Government's *notice*, Defendant's *Opposition*,[2] and hearing argument from both parties, the Court orally DENIED the Government's proffer.  These written reasons supplement the oral reasons given.

**A. INTRODUCTION AND PROCEDURAL BACKGROUND**

On April 17, 2025, Defendant was indicted with a single count of making a hoax communication in violation of 18 U.S.C. § 1038(a)(1).[3]  It is alleged that during a November 15, 2024 telephone call with Dawn Fournier ("Fournier")—an employee of Gulf South Disability Law Firm who was assisting Defendant with a question regarding his Social Security benefits—Defendant became irate and "threatened to go to the Bankers Avenue [Social Security Office] and blow it up," warning that "[the 1995 Oklahoma City bombing] had nothing on him."[4]  When asked for his name, Defendant told Fournier that

---

[1] Rec. Doc. No. 38.
[2] Rec. Doc. No. 48.
[3] Rec. Doc. No. 3, p. 1.
[4] *Id.*

she would find out later that day on the news and asked if she could order him an Uber to that location.[5]  Fournier immediately reported the incident to local law enforcement, triggering a response to the threatened Social Security Administration ("SSA") office building.  A subsequent investigation of the number used to make the threatening call led investigators to Defendant and the present prosecution was initiated soon thereafter.

On June 12, 2026, the Government filed a notice of intent "to present evidence of [Defendant's] prior convictions or arrests wherein he engaged in similar acts of defiance, hostility, threats, violence and non-cooperation, against authority figures, against people who were trying to help him, or to obtain a benefit."[6]  Specifically, the Government's offer consists of evidence that:

(1) On **February 21, 2020**, Defendant punched a nurse as she was attempting to render care and refused to comply with her request for him to take a shower, instead calling her a "Bitch."  Defendant was arrested for aggravated felony battery, but the offense was subsequently dismissed.

(2) On **September 18, 2013**, Defendant, after being denied a new room by a hotel desk clerk, walked into the hotel's lobby (machete in hand) and aggressively waved the weapon toward the clerk demanding another room. When the clerk attempted to activate an alarm system, Defendant shouted "I have a gun!"  The clerk acquiesced Defendant's request for another room, after which Defendant left the lobby.  Police were called and, after a search of Defendant's room, no gun was recovered.  Defendant was arrested and

---

[5] *Id.*
[6] Rec. Doc. No. 38, p. 1.

subsequently convicted of aggravated assault with a deadly weapon without the intent to kill, a felony.

## B. LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[7]  Paragraph (b)(2) of that section, however, states that such evidence may be "admissible for another purpose, such as proving … motive, intent, knowledge, or a lack of accident."[8]

Admissibility under Rule 404(b) is determined pursuant to the two-pronged test set out in *United States v. Beechum* ("the *Beechum* steps").[9]  As to the first step, the Court must determine whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character."[10]  At this step, the relevance of an extrinsic act "is a function of its similarity to the offense charged," and whether it is offered to prove one of the permissible elements listed in Rule 404(b)(2).[11]  At the second step, the Court must ensure that the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice" and meets the other requirements of FRE 403.[12]  In making this determination, the Court is to consider (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic act and the charged offense, (3) the amount of time separating the extrinsic act and the charged offense, and (4) the court's limiting instruction ("the *Smith* factors").[13]

---

[7] Fed. R. Evid. 404(b)(1).
[8] Fed. R. Evid. 404(b)(2) (cleaned up).
[9] 582 F.2d 898 (5th Cir. 1978).
[10] *Id* at 911.
[11] *Id.*
[12] *United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025).
[13] *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015).

The government bears the burden to demonstrate that evidence of an extrinsic act is admissible pursuant to FRE 404(b).[14]

## C. ANALYSIS

*Relevance*.  With respect to the first *Beechum* step, the Government argues that its offered evidence "is relevant to [Defendant's] state of mind (motive, intent, purpose, and lack of mistake) when he threatened to blow up the [Social Security office] and directly referred to the Oklahoma City bombing."[15]  It maintains that the offered prior acts evidence have an "overriding theme" with the charged conduct—"Smith refuses to comply with rules or requests, he becomes frustrated or angry and then lashes out, both verbally and with acts of violence."[16]  Defendant does not challenge the offered evidence on relevance-specific grounds, but responds that the Government's *notice* "makes clear its [reason] for seeking to admit [the evidence] is for the impermissible purpose of demonstrating [Defendant's] propensity to act in a similar way as is charged in the *Indictment*.[17]

Defendant's point is well taken.  Evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[18]  Indeed, "the bar is low".[19]  Where, as here, the issue to be addressed is Defendant's intent to commit the

---

[14] *United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023).

[15] Rec. Doc. No. 38, p. 6.  While the Government presents four separate 404(b)(2) permissible purposes, it is clear to the Court that they all harken to the Government's need to show that Defendant engaged in the charged conduct "with [an] intent to convey false or misleading information."  *See* 18 U.S.C. § 1038(a). Accordingly, the Court considers each of the stated permissible purposes to share an overriding 'state of mind' theme such that a determination on any one would command the same result for each.  For that reason, the Court's hereinafter use of the word "intent" is intended to capture each of the Government's stated purposes as though it is being discussed individually.

[16] *Id* at p. 6.

[17] Rec. Doc. No. 48, p. 2 (cleaned up).

[18] Fed. R. Evid. 401 (emphasis added).

[19] *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017).

crime charged, "the relevancy of the extrinsic offense derives from [his] indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses."[20] To this point, the Government has presented two prior acts with a sufficient similarity to the charged conduct such that it lends to what the Court agrees is an "overriding theme"— one which shows the Defendant indulging in the same spur-of-the-moment intent to counter an unsatisfactory stimulus (i.e., not getting his way) with physical or verbal aggression.  The Court concludes that because the Defendant's mental states in the two extrinsic acts and the charged crime are alike in both the manner of their provocation and manifestation in violent/threatening acts, they are relevant to the issue of intent and satisfy step one of the *Beechum* inquiry.[21]

*Probative Value and Prejudice*.  Step two of the *Beechum* test invites an analysis under the familiar rule 403 balancing test.[22]  The rule provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[23]  That said, the initial task for the Court is to undertake a commonsense assessment of all the circumstances surrounding the extrinsic acts, with a particular attention to their bearing on the *Smith* factors.[24]  Even if all four factors weigh for the Government, however, the district court must still consider whether its assessment otherwise implicates the traditional concerns of rule 403  (i.e., unfair prejudice, confusion, or misleading).[25]

---

[20] *United States v. Chandler*, 368 Fed. App'x 495, 499 (5th Cir. 2010) (quoting *Beechum*, 582 F.2d at 911).
[21] *Id.*
[22] *United States v. Anderson*, 933 F.2d 1261, 1272 (5th Cir. 1991); *United States v. Taylor*, 2024 WL 2977891, at *3 (E.D. La. June 13, 2024) ("[t]he second step of the *Beechum* test is essentially to conduct a Rule 403 analysis").
[23] Fed. R. Evid. 403.
[24] *See United States v. Williams*, 2016 WL 6600144, at *4 (E.D. La. Nov. 8, 2016).
[25] *Hernandez v. United States*, 2023 WL 11967352, at *82 (S.D. Tex. Dec. 18, 2023) (internal citations omitted).

The Court notes from the outset that the kind of "intent" the Government seeks to establish is that which forms quickly—in the minutes, if not seconds—after Defendant becomes dissatisfied with the acts or comments of an authority figure, or somebody from whom he is seeking a desired result. Indeed, the offered prior acts show just that: Defendant physically and verbally accosting others mere moments after they fail to oblige his demands (i.e., to not take a shower and a new hotel room). It is axiomatic, however, that "evidence of prior [acts] involving *intent of the moment* are hardly ever probative of later acts involving similarly split-second intent."[26] Such acts "have less to do with the type of specific intent that may arise later … than they do with the defendant's overall disposition of character."[27] Notably, "if there is one clear category that is not an exception to the general rule against allowing evidence of prior acts, it is that which includes character [and] disposition."[28] Because the offered prior acts, like the charged conduct, involve impulse or intent that forms quickly and spontaneously, the Court concludes they harbor very little, if any, probative value of Defendant's likewise hastily formed intent *of the moment* during the November 15, 2024 call. Conversely, the danger of unfair prejudice that such evidence presents is significant.

*(a) Government's need for offered evidence*. The Court recognizes the Government's position, that, because much of its "proof is circumstantial … [t]he probity of the prior similar offenses in proving [Defendant's] state of mind is … substantial and necessary."[29] While the offered prior acts are evidence of Defendant's tendency to act

---

[26] *United States v. San Martin*, 505 F.2d 918, 923 (5th Cir. 1974) (emphasis added); *see United States v. McCollum*, 732 F.2d 1419, 1425 n.5 (9th Cir. 1984) (citing *United States v. Bettencourt*, 614 F.2d 214 (9th Cir. 1980) ("the existence of spontaneous intent on one occasion has very little value for establishing such spontaneous intent on another occasion.")).

[27] *Id.*

[28] *Id.*

[29] Rec. Doc. No. 38, p. 6.

impulsively, they are not probative of his intent to communicate a hoax. The first *Smith* factor weighs against its admission.

(b) *Similarity between extrinsic acts and charged conduct*. While it is typically true that a "[s]imilarity between the prior and charged offenses increases both the probative value and prejudicial effect of extrinsic evidence,"[30] the Government's cited similarities here are not sufficient to demonstrate a probative similarity. Instead, any such similarity—which the Government aptly describes as an "overriding theme"—not only highlights Defendant's "propensity for engaging in violence or threats against people associated with authority,"[31] but also increases the risk that "the jury might use the evidence of one of the crimes to infer [Defendant's] criminal <u>disposition</u> [instead of intent] to commit the … crimes charged."[32] As the Government further explains, the prior acts are specifically offered to show that an intent was present when Defendant "<u>lashed out</u> and threatened to blow up the SSA Office."[33] The Court, however, struggles to see how one can intend[34] to lash out in a moment of dissatisfaction or frustration at an unanticipated stimulus, let alone how a jury can infer that someone intended to 'lash out' on one occasion based on their spontaneously doing so under factually distinct circumstances years prior. This case therefore presents a unique circumstance where the similarity of the other acts to the charged conduct increases prejudice, but not probative value.[35] For that reason, the

---

[30] *United States v. Jones*, 930 F.3d 366, 374 (5th Cir. 2019) (internal citations omitted)

[31] Rec. Doc. No. 38, pp. 6-7.

[32] *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990).

[33] Rec. Doc. No. 38, p. 7.

[34] "Intent" refers to the "mental resolution or determination to do" an act. *Intent*, BLACK'S LAW DICTIONARY (12 ed. 2024).

[35] This is especially true for the February 2020 incident which, although it did lead to Defendant's arrest, did not result in a conviction—thus it is among that category of extrinsic acts that the *Beechum* court recognized as having an especially high danger of unfair prejudice. *Beechum*, 582 F.2d at 914.

second *Smith* factor, too, weighs against admission of the Government's offered evidence.

    *(c) Temporal remoteness*.  The third factor of *Beechum*'s second step analysis, regarding the temporal remoteness of offered prior acts, is no more favorable to the Government's position.  While the Government correctly notes that "the age of [an act] does not [categorically] bar it use under rule 404(b),"[36] the temporal remoteness of extrinsic evidence may nevertheless weaken its probative value and, thus, weigh in favor of its exclusion under rule 403.[37]  Further, the remoteness of prior act evidence is an especially weighty consideration where the issue to be proved is a defendant's intent.[38]

    Here, the only prior act for which Defendant has been convicted occurred in 2013, more than eleven (11) years before the charged conduct.  Instructively, the Fifth Circuit has deemed "that evidence of misconduct committed less than three years prior to the charged crime is admissible, while suggesting that ten years may be too remote."[39]  Considering the low probative value, and the substantial risk of prejudice, the Court finds this balance is only exacerbated by the significant passage of time.  If anything, the concerns that underlie jurisprudence recognizing ten (10) years as "too remote" for other act evidence applies with added force, here, where the prior act is offered to show what is clearly a spontaneous and quickly formed intent to communicate a false threat in

---

[36] Rec. Doc. No. 38, p. 8 (citing *United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006)).

[37] *United States v. Pea*, 2021 WL 1566943, at *3 (W.D. La. Apr. 21, 2021).

[38] *United States v. Restrepo*, 417 F.2d 927, 928 (5th Cir. 1969) (per curiam) ("[w]here prior similar criminal acts are not too remote in point of time from the offense charged, they are admissible to show intent.").

[39] *United States v. Juarez*, 866 F.3d 622, 628 (5th Cir. 2017) (citing *United States v. Grimes*, 244 F.3d 375, 384-85 (5th Cir. 2001)).

response to a tangentially related stimulus (i.e., Defendant not getting his way).[40]    For that reason, the third *Smith* factor weighs against admission of this prior act evidence.

While the 2020 incident is not so remote, the Court recognizes that four (4) years is not an insignificant period when considering the rapidly forming intent displayed there, which the Government urges is probative under the present circumstances.  In light of the low probative value that this prior act evidence, by its nature, has been determined to possess, the Court finds its temporal proximity is a neutral factor to that effect under the *Beechum* test.

*(d) Other Rule 403 Concerns and Limiting Instruction*.  The Government lastly contends that the prior act evidence is not "heinous" or "emotionally charged or incendiary" such that "they would hardly incite the jury to irrational decision by [their] force on human emotion." [41]    As for any other prejudice the prior acts may invite, the Government argues this can be satisfactorily addressed by a limiting instruction explaining to the jury the limited purpose for which the other act evidence is being admitted—providing the Fifth Circuit's pattern jury instruction on "Similar Acts" for the Court's consideration.[42]

The Court agrees that the offered prior acts are not "heinous" as to warrant their exclusion on that ground.  The question, then, is whether a limiting instruction is "sufficient to prevent the threat of prejudice."[43]  As discussed previously, however, the prior acts are not probative of an intent to communicate a false threat (i.e., a hoax).  Given their low

---

[40] *See United States v. Carter*, 516 F.2d 431, 435 (5th Cir. 1975) (citing *San Martin*, 505 F.2d at 922) (recognizing that offenses from nine to ten years earlier have been held "too remote in time to have probative value" with respect to a "defendant's criminal intent at the time of the commission of the act charged.").

[41] Rec. Doc. No. 38 p. 9.

[42] *Id.*

[43] *United States v. Chapman*, 851 F.3d 363, 379 (5th Cir. 2017).

9

probative value, and the dangers of unfair prejudice that the prior acts invite concerning Defendant's character/disposition to act impulsively, the Court finds a limiting instruction insufficient to draw the distinction between intent/state of mind and disposition/character evidence.  In any event, assuming such a line could be drawn, the Court is not inclined to do so for prior act evidence which harbors such little probative value that it is substantially outweighed by the dangers of unfair prejudice—namely, that which is inherent to classic character-to-conduct evidence.

## D.  CONCLUSION

For the foregoing reasons, the Defendant's objection to the Government's *notice of intent*[44] to offer other acts evidence under Federal Rule of Evidence 404(b) is SUSTAINED and the offered extrinsic acts are deemed INADMISISBLE and excluded.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 31, 2026</u>.

_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[44] Rec. Doc. No. 38.

10